UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY ALESSI

                              Plaintiff,          07-CV-6163

              v.                                  **DECISION AND**
                                                  **ORDER**
MONROE COUNTY, MONROE COUNTY SHERIFF'S
DEPARTMENT, and ROBIN BROWN, in his own
Official and Individual capacity,

                              Defendant.
_____

## <u>INTRODUCTION</u>

Plaintiff Gary Alessi, Jr. ("plaintiff") a Sheriff's Deputy employed by the defendant Monroe County Sheriff's Department ("Sheriff's Department"), brings this action pursuant to 42 U.S.C. § 1983 and the New York State Human Rights Law ("NYSHRL") claiming that the defendants retaliated against him for exercising his right to freedom of speech. Specifically, plaintiff alleges that the defendants retaliated against him for complaining of hostile and dangerous working conditions allegedly created by defendant Robin Brown, a Lieutenant who, at the relevant times, supervised plaintiff. In addition, plaintiff claims violations of the Family Medical Leave Act ("FMLA").

Defendants, Monroe County and the Sheriff's Department[1] ("Monroe County defendants") move to dismiss the Complaint pursuant to Federal

---

[1] The defendants seek dismissal of the Complaint against the Sheriff's Department on the ground that it is not a proper defendant. See Def. Br. at 3. They argue that the Sheriff's Department is not a separate legal entity subject to suit. See id. Plaintiff has not opposed and in fact has conceded that the Sheriff's Department is not a proper defendant. See Pl. Opp. Br. at 9. Thus, the Sheriff's Department is dismissed as a defendant with prejudice. The Court will address claims relating only to defendant Monroe County.

Rules of Civil Procedure 12(c) on grounds that plaintiff has failed to state a cause of action for the violation of his right to be free from retaliation for exercising his rights under the First Amendment. The Monroe County defendants also claim that the plaintiff has failed to establish that the speech he engaged in was protected by the First Amendment. Moreover, the Monroe County defendants contend that no municipal policy or custom is alleged as to Monroe County. In addition, the County argues that plaintiff has failed to allege sufficient facts to state a claim regarding violations of the FMLA. For the reasons set forth below, I grant the Monroe County defendants' motion for judgment on the pleadings. Accordingly, the Complaint is dismissed as to the Monroe County defendants.[2]

## BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiff's Complaint, including documents incorporated by reference or upon which plaintiff relied in drafting the Complaint. Plaintiff Alessi is a Deputy in the Monroe County Sheriff's Department. Plaintiff, who has worked for the Sheriff's Department for over 18 years, was, at the time the Complaint in this case was filed, assigned to the Monroe County Jail located in Henrietta, New York. In 2006, defendant Robin Brown, a Sergeant in the Sheriff's Department ("Brown"), was transferred to the Henrietta jail, and became plaintiff's supervisor. In April 2006, Brown called plaintiff into

---

[2] The Monroe County Attorney does not appear for, and has not moved on behalf of the remaining defendant Robin Brown. Sgt. Brown appears by separate counsel.

his office and reprimanded, yelled and screamed at him regarding something plaintiff allegedly did a few days earlier when plaintiff became sick at work. The reprimand related to an incident in which plaintiff became sick at work and after informing Brown, he was told to go home because of his "extreme illness."

Plaintiff asserts that several days later on or about April 2006, Brown called plaintiff into his office and said that when plaintiff went home early "'you fucked me,' because plaintiff was supposed to do another relief that night for" another deputy. Further, plaintiff claims that he then spoke to that deputy regarding the incident and that deputy informed him that "it is O.K." Thereafter, plaintiff informed Brown that he spoke to the deputy involved about not relieving him and he was told it was "O.K." Upon hearing this Brown became extremely upset and yelled and screamed at plaintiff. Brown told plaintiff not to go behind his back. Plaintiff claims he felt threatened and so he started to walk out but Brown screamed at him to "get the fuck back in here." Brown then closed the door with plaintiff inside and threatened plaintiff saying "I'm not afraid of you" and "we can settle this right here."

Immediately after the incident, plaintiff contacted the Union, claiming that Brown had created a hostile and abusive working environment. An investigation into the matter was commenced by the Sheriff's Department Internal Affairs Unit ("IAU"), and several months later, plaintiff was informed that the investigation found

that Brown had acted in an unprofessional manner with respect to his conduct towards the plaintiff and he was reprimanded for his conduct. The investigation also found that the alleged threats Brown made to plaintiff were unfounded. Plaintiff was not satisfied with the Sheriff's Department's investigation, and contacted a member of the Department's Human Resources office. Plaintiff then met with the Undersheriff in October of 2006, who agreed to reopen the investigation into Brown's conduct. According to the Complaint, Brown continued to engage in harassing and demeaning conduct towards him. Plaintiff claims that in January 2007, Brown had an incident with another deputy in front of the inmates and after such incident Brown was permanently transferred out of Henrietta and back to the Downtown Monroe County Jail.

With respect to plaintiff's FMLA claims, plaintiff alleges that in or about 2005, plaintiff's wife was diagnosed with Multiple Sclerosis, which severely affected her ability to take care of their two children ages 8 and 5. According to the Complaint, plaintiff filed the necessary paperwork for the FMLA qualifying leave and it was granted by the Monroe County Human Resources Department in June 2006. Plaintiff alleges that he took about 25 days of intermittent leave for each of the following one to two years, without incident. In February 2007, seven months after the June 2006 grant of FMLA leave rights to plaintiff, Monroe County sent a letter to plaintiff informing him that a medical re-certification for his FMLA was

necessary. Thereafter, the County re-certified plaintiff for FMLA leave. Further, plaintiff claims that six months after he was granted the FMLA leave in June 2006, he started suffering retaliation concerning his FMLA qualifying leave. In January 2007 Capt. Palma allegedly disciplined plaintiff for calling Central Control when he needed to be out sick in December 2006. Capt. Palma issued a counseling memorandum, which plaintiff signed stating that plaintiff failed to comply with call-in requirements for two successive work absences. Plaintiff is still currently employed at the Monroe County Jail.

## DISCUSSION

### I.   Motion for Judgment on the Pleadings

In deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion to dismiss under Rule 12(b)(6). See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999). Accordingly, when considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the Complaint and draw all reasonable inferences in favor of the non-moving party," McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007) (citation omitted), although mere "'conclusions of law or unwarranted deductions'" need not be accepted. See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore, James William & Jo Desha Lucas, Moore's Federal Practice ¶12.08, at 2266-69 (2d ed.1984)). Conclusory allegations

"'will not suffice to prevent a motion to dismiss.'" Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002) (quoting Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y.2000)). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (quotations omitted).

Moreover, under Supreme Court precedent, a district court must determine whether the "[f]actual allegations...raise a right to relief above the speculative level, on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the allegations in the Complaint must meet the standard of "plausibility." See id. at 563 n. 8, 564. Twombly does not require that the complaint provide "detailed factual allegations," id. at 555, however, it must "amplify a claim with some factual allegations...to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir.2007).

Although, in the Rule 12(b)(6) context, the court is "normally required to look only to the allegations on the face of the complaint," it may also "consider documents...that are attached to the complaint or incorporated in it by reference...." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007). "[E]ven if not attached or

incorporated by reference, a document 'upon which the complaint *solely* relies and which is *integral to the* complaint' may be considered by the court in ruling on such a motion." Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991)) (emphasis in original). "And whatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" Id. at 510 (quoting Twombly, 550 U.S. at 563.)

Here, the Complaint expressly references the joint complaint attached as exhibit 1 to the Declaration of James L. Gelormini ("Gelormini Decl.") in support of Monroe County's motion to dismiss. In addition, Monroe County attached exhibits 2 and 3 which were communications relied on by plaintiff in ¶¶ 6 and 40 of the Complaint. Further, Monroe County attached exhibits 4 and 5 relating to documents on the re-certification of plaintiff's FMLA benefits, which are integral to the Complaint in this action. Accordingly, in determining the adequacy of plaintiff's claims, the court shall consider the documents/exhibits set forth above, as well as the Complaint itself. See Rothman v. Gregor, 220 F.3d 81, 99-89 (2d Cir.2000) (Court found that the documents attached to the affidavit in support of motion to dismiss were documents relied upon by plaintiff and were "documents that plaintiff either possessed or knew

about and upon which they relied in bringing the suit"); <u>Roth</u>, 489 F.3d at 509; <u>see also Cosmas v. Hassett</u>, 886 F.2d 8, 13 (2d Cir.1989); <u>Fagan v. AmerisourceBergen Corp.</u>, 356 F.Supp.2d 198, 220 n. 7 (E.D.N.Y.2004). Thus, the Court will consider the County's exhibits for purposes of deciding this motion.

## II. <u>Plaintiff Cannot Establish Municipal Liability Absent A Custom, Policy or Practice</u>

A municipality may be held liable as a "person" for purposes of §1983 when a civil rights violation results from a municipality's policy or custom. <u>See Monell v. Dept. of Soc. Serv.</u>, 436 U.S. 658, 690-91 (1978); <u>Coon v. Town of Springfield</u>, 404 F.3d 683, 686 (2d Cir.2005), citing <u>Monell</u>, 436 U.S. at 694. A municipality, however, cannot be held liable under §1983 for the actions of its employees or agents on the basis of *respondeat superior*. <u>See Batista v. Rodriquez</u>, 702 F.2d 393, 397 (2d Cir.1983), citing <u>Monell</u>, 436 U.S. at 691. Instead, to establish municipal liability in a § 1983 action, for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir.2007), quoting <u>Batista</u>, 702 F.2d at 397. A plaintiff may establish the existence of a policy or custom by submitting evidence of the policy itself, or by "establishing that responsible supervisory officials acquiesced in a pattern of unconstitutional

conduct by subordinates." Dove v. Fordham Univ., 56 F.Supp.2d 330, 336 (S.D.N.Y. 1999).

Plaintiff fails to plead any of these three elements. The §1983 claim against Monroe County appears to be based entirely on retaliation against employees who exercise their First Amendment rights. However, even when read liberally, the Complaint does not plead facts showing that plaintiff's rights were violated pursuant to a municipal policy or custom. See Kamholtz v. Yates County, 2008 WL 5114964 at *8 n.6 (Court held plaintiff "failed to proffer any evidence of a policy, custom, or failure to train, that led to any alleged constitutional violation.") Nor is there evidence that any municipal policymaker adopted any policy attributable to the County. See Fisk v. Letterman, 501 F.Supp.2d 505, 527 (S.D.N.Y.2007) ("[A] single incident of unconstitutional conduct by a non-policymaking employee of the City will generally not suffice to establish liability [under Section 1983]") (internal quotation marks omitted); Davis v. City of New York, 228 F.Supp.2d 327, 336 (S.D.N.Y.2002) (same). Indeed, in his opposition papers, plaintiff has not produced evidence of any County policy or custom, let alone a relationship between such a policy and action by the County that affected the plaintiff. Moreover, the §1983 claim against the County does not allege that plaintiff's injuries resulted from any policy or custom. Accordingly, Monroe County's motion to dismiss plaintiff's §1983 claim is granted.

### III. **Plaintiff has Failed to State a Claim for a Violation of his First Amendment Rights**

The Second Circuit Court of Appeals has acknowledged that "the elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case before the district court." See Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir.2008). In this instance, where the plaintiff, a Deputy in the Sheriff's Department is a public employee who claims First Amendment retaliation, he must allege the following: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.2003) (internal quotation marks and citations omitted); Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir.2005); see also Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed.Appx. 66, 68, 2008 WL 2415726 at *1 (2d Cir. 2008); Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir.2006)); Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996).

The First Amendment protects the right of public employees to speak-out without fear of reprisal on issues of public concern. See Frank v. Relin, 1 F.3d 1317 (2d Cir., 1993), cert. denied, 510 U.S. 1012 (1993); see also Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780 (2d Cir.1991) (It is well-settled that a public employer may

not discharge an employee in retaliation for the exercise of his or her free speech right). However:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

See Connick v. Myers, 461 U.S. 138, 147 (1983). Moreover, even where an employee has spoken out on matters of public concern, a public employer may still take employment action against the employee if the speech is likely to, or in fact has, disrupted the performance of governmental activities, or is detrimental to governmental efficiency. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006); Mandell v. Cty. of Suffolk, 316 F.3d 368 (2d Cir. 2003); Connick, 461 U.S. at 140 (While a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," the government, as an employer, has an interest "in promoting the efficiency of the public services it performs through its employees"). Thus, this Court is charged with the task of balancing these competing interests.

Whether or not particular speech relates to a matter of public concern is "ordinarily a question of law decided on the whole record by taking into account the content, form, and context of the given statement." See Melzer v. Bd. of Educ., 336 F.3d 185, 196 (2d

Cir.2003); see also Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir.2008). If the plaintiff is able to establish a prima facie case of retaliation, the court must then determine whether or not the government employer was justified in taking action against the employee. See Garcetti v. Cebballos, 547 U.S. 410 (2006).

Applying the above principles to the instant case, I find that plaintiff's speech--his allegations about his complaint against Brown to the Union and reporting Brown to the IAU and the County's Human Resources office for Brown's allegedly inappropriate behavior and later speaking directly to other "high ranking officials" in the Sheriff's Department at the October 26, 2006 meeting--was in relation to the scope of his employment as a deputy with the Sheriff's Department and not protected speech under the Garcetti Court's interpretation of the First Amendment. Even when considering the Complaint in the light most favorable to plaintiff, the allegations show that plaintiff was speaking as an employee on matters of personal interest and not as a citizen on matters of public concern when he complained to the Union, the Human Resources Department and the IAU regarding Brown's behavior towards him. See Complaint ¶¶ 20,70,71,82. Accordingly, plaintiff was not engaged in protected speech and cannot proceed on a First Amendment retaliation claim. See Ruotolo, 514 F3d at 187-88.

Further, the fact that a statement is made in private and at work, militates against a finding of "public concern," but that fact

alone is not dispositive. See Garcetti, 547 U.S. at 421 ("That [plaintiff] expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work"). Matters that are purely personal or calculated to redress personal grievances will not qualify as public concerns. See Hoyt v. Andreucci, 433 F.3d 320, 330 (2d Cir.2006). Moreover, comments by a public employee on internal office matters do not constitute public concern and thus are not entitled to constitutional protection. See Connick, 461 U.S. at 148-149 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case."); Kelly v. City of Mount Vernon, 344 F.Supp.2d 395, 402 (S.D.N.Y.2004) ("Speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, cannot support a First Amendment claim."); Cahill v. O'Donnell, 75 F.Supp.2d 264, 272 (S.D.N.Y.1999) (same).

Here, as alleged in the Complaint, plaintiff spoke on both occasions as an employee, and in private about a personal grievance and not a matter of public concern. In addition, the comments as asserted in the Complaint contain no sense of urgency, nor formality, nor inclination to warn the citizenry of some pending harm. There is no allegation of any concern for the public welfare. Plaintiff's

allegations show that he filed a grievance and sought redress with the Union for Brown's treatment towards him personally. <u>See</u> Gelormini Decl., Ex. 1, "I ask you to look into this matter as I fear future problems and conflicts will arise between myself [deputy Alessi] and him [Sgt. Brown] in the future.") Typically, a complaint similar to this made to the union, does not involve matters of public concern. <u>See</u> <u>Hanig v. Yorktown Cent. Sch. Dist.</u>, 384 F.Supp.2d 710, 722 (S.D.N.Y.2005) ("We have serious doubts as to whether plaintiff's complaints to her union... involves a matter of public concern....To the contrary, it is clear that plaintiff's speech related primarily if not exclusively to her desire to protect her job and/or her reputation[.]") Here, plaintiff's complaint to the Union, which eventually involved the IAU was intended to redress his personal complaints against Brown. However, it did not speak to any matter of public concern or request any action except against Brown personally. Indeed, the IAU is not concerned with matters of public concern but with the personal conduct of officers.

Furthermore, assuming plaintiff directly complained to the Union, the IAU and eventually to the Human Resources Department that led to the October 2006 meeting with "high ranking officials," it was routine speech concerning an employment issue made in an employment context within institutional channels and accordingly, purely private speech. The content, form, and context of the comments alleged in plaintiff's Complaint do not suggest plaintiff was speaking as a

citizen on a matter of public concern, but rather as an employee upset at what was happening to him. See Fusco v. City of Rensselaer, N.Y., 2006 WL 752794, at *8 (N.D.N.Y.2006) ("[S]peech about individual...problems within a police department, or one of its officers, are not matters of public concern.")

Plaintiff's contention that the real animus of his speech was his concern that Brown's verbal abuse and creation of a hostile work environment resulted in public safety concerns is unavailing. The speaker's motive for speaking is not dispositive in determining whether or not the speech in question touches on a matter of public importance or concern. See Sousa v. Roque, 578 F.3d 164, 173-174 (2d Cir.2009). In addition, the record as a whole reveals that the plaintiff complained about verbal harassment from Brown and possible FMLA violations regarding alleged abuses of sick time. These matters are quintessentially employment matters, and speech regarding these matters does not rise to the level of constitutionally protected speech. See id., ("An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking 'upon matters only of personal interest.'")(citation omitted). Moreover, plaintiff seeks only damages in his Complaint to compensate him for his personal losses but does not seek equitable relief including any sort of system-wide relief. See Ruotolo, 514 F.3d at 190. Thus, plaintiff's first cause of action, asserting a violation of his First Amendment retaliation claim is dismissed.

## IV.  __FMLA Claims__

### A.    __Prejudice relating to FMLA Violations__

"Employers covered by FMLA are required to grant leave to eligible employees: ... (3) To care for the employee's spouse, son, daughter, or parent with a serious health condition." 29 U.S.C. § 2612(a)(1). To prevail on a claim under the FMLA, the employee must show that the employer interfered with, restrained, or denied the exercise of his FMLA rights. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (citing 29 U.S.C. §§ 2615, 2617).[3] In addition, the employee can only recover to the extent that the violation caused him injury. See id. at 89-93 (noting that §2617 provides relief only for losses "by reason of the violation" and holding that plaintiff must therefore show prejudice). In this case, plaintiff has failed to alleged sufficient facts to show that he was prejudiced or that he suffered financial harm or injury that could be recovered pursuant to §2617. See Santiago v. New York City Police Dept., 2007 WL 4382752, at *15 (S.D.N.Y.2007) ("employees can only recover to the extent that the [FMLA] violation caused him injury.")

The FMLA provides for compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the

---

[3]29 U.S.C. § 2617 states: "To prevail under the cause of action set out in §2617, an employee must prove, as a threshold matter, that the employer violated §2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, §2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' §2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, §2617(a)(1)(B). The remedy is tailored to the harm suffered."

employee was denied or lost. 29 U.S.C. §2617(a)(1)(A)(i)(I). If the employee was not denied or did not suffer a loss of income, the employee may recover other actual monetary losses that directly resulted from the violation. 29 U.S.C. § 2617(a)(1)(A)(i)(II). Here, plaintiff did not suffer any diminution of income, and, on the record before the Court, incurred no costs as a result of the alleged violation. See Cianci v. Pettibone Corp., 152 F3d 723, 728-729 (7th Cir.1998). Moreover, plaintiff merely alleges that he is "entitled to recover damages as provided ar 29 U.S.C. §2917." See Complaint, ¶130. However, plaintiff does not assert that he incurred any of the loses for which §2617 permits recovery as a result of the incidents he alleges in support of both his FMLA claims. See Complaint, ¶¶129, 134. Accordingly, plaintiff has failed to allege that he has a remedy and that he has been prejudiced under the FMLA.

## B. Willful Violations under the FMLA

Plaintiff's second cause of action alleges that Monroe County willfully violated the FMLA when it denied, restrained and interfered with plaintiff's exercise or attempt to exercise his rights under the FMLA. See Complaint, ¶¶127-130. An alleged violation is willful if the defendant either knew or recklessly disregarded whether its conduct violated the FMLA. See Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531-32 (2d Cir.2004) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Accordingly, if a defendant acts reasonably, or unreasonably but not recklessly, when considering the

legality of its actions, the alleged violations should not be considered willful. <u>See</u> <u>Porter</u>, 392 F.3d at 531-32 (quoting <u>McLaughlin</u>, 486 U.S. at 135 n. 13). Defendant argues that any alleged violations cannot be considered willful because there is no evidence to suggest that it recklessly determined its actions were in compliance with the FMLA. Plaintiff sets forth no facts from which it could be inferred that Monroe County acted with actual knowledge that its conduct was prohibited by the FMLA or showed a reckless disregard for the matter.

The evidence, viewed in the light most favorable to plaintiff, shows that plaintiff filed the necessary paperwork for FMLA qualifying leave, which was granted by the Monroe County Human Resources Department in June 2006 due to his wife's illness. According to the Complaint, plaintiff took about 25 days of intermittent leave for each of the following one to two years, without incident. Seven months after the June 2006 grant of FMLA leave to plaintiff, Monroe County sent a letter to plaintiff informing him that a medical re-certification for his FMLA was necessary and thereafter, plaintiff's FMLA leave was re-certified. In January 2007 Capt. Palma allegedly disciplined plaintiff for calling Central Control when he needed to be out sick in December 2006. Capt. Palma issued a counseling memorandum, which plaintiff signed stating that plaintiff failed to comply with call-in requirements for two successive work absences. It is clear from the allegations in the

Complaint that plaintiff has set forth no facts from which it could be inferred that the County acted with actual knowledge that its conduct was prohibited by the FMLA or that it acted recklessly in determining plaintiff's legal obligations under the FMLA. Accordingly, plaintiff has failed to properly plead that Monroe County willfully violated the FMLA.

### C. Denial and Interference With Benefits Under the FMLA

To succeed on a cause of action for the denial of, or interference with, benefits under the FMLA, a plaintiff must establish that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA. See Matya v. Dexter Corp., 2006 WL 931870, at *10 (W.D.N.Y.2006); Brown v. Pension Boards, 488 F.Supp.2d 395, 408 (S.D.N.Y.2007). The first four elements have been met. Accordingly, to succeed, plaintiff must establish the fifth element, i.e. that he was denied benefits he was entitled to under the Act. However, as shown in the Complaint and described in more detail below, plaintiff does not allege he was denied FMLA leave benefits. Indeed, the Complaint asserts that after plaintiff's FMLA leave was initially approved in June 2006, plaintiff took about 25 days of intermittent leave for each of the following one to two years, without incident. Seven months after the June 2006 grant of FMLA

leave rights to plaintiff, Monroe County informed plaintiff that a re-certification of his FMLA was necessary and thereafter, plaintiff's FMLA leave was re-certified. Thus, the facts demonstrate that plaintiff was granted FMLA leave and as such, plaintiff cannot satisfy the required fifth element that he was denied FMLA benefits. See Esser v. Rainbow Advertising Sales Corp., 448 F.Supp.2d 574, 580 (S.D.N.Y.2006).

Moreover, plaintiff outlines several incidents in support of his FMLA cause of action, none of which involved a denial of FMLA leave benefits. See Complaint ¶¶28-29, 129. For instance, plaintiff complained that he was disciplined for calling Central Control when he needed to be out sick in December 2006 resulting in Capt. Palma issuing a counseling memorandum in January 2007 stating that plaintiff failed to comply with call-in requirements for two successive work absences. However, these were sick days and not related to plaintiff's FMLA leave since his FMLA was approved for his wife's illness. Thus, the January 2007 counseling memorandum did not result in any denial of FMLA leave benefits and did not constitute a FMLA violation. In addition, plaintiff alleges he was "required to do more frequent certifications." However, plaintiff was only asked once to re-certify his FMLA leave, which occurred seven months after the initial grant of FMLA leave. When the County acted upon the re-certification in February 2007, it allowed plaintiff's FMLA leave extending it to June 2007. Plaintiff does not even assert that Monroe

County violated the FMLA requirements in requesting re-certification. As a result, plaintiff was not denied any FMLA leave benefits due to the request for re-certification.[4]

Finally, the Complaint alleges that plaintiff "was written up by Capt. Palma for using sick days" because he allegedly "used more than 21 sick days for the year." See Complaint ¶43. Plaintiff claims that Capt. Palma should have "count[ed] the time towards his FMLA qualified and certified leave." See id. ¶129. While defendants assert they have no record of any discipline taken against the plaintiff for using 21 days of sick leave, it appears that plaintiff is referring to a memo by Capt. Palma dated February 13, 2007. The memo informed plaintiff of the County's FMLA re-certification request letter and mentioned that plaintiff took "twenty one (21) full day FMLA absences." See Gelormini Decl., Ex. 4. Plaintiff asserts that the 21 days were not treated by the County as FMLA leave. However, this is inconsistent with plaintiff's admission that after his FMLA leave was initially approved in June 2006 he "took about 25 days of intermittent [FMLA] leave for each of the following 1 to 2 years without incident." See Complaint, ¶¶5-6. Further, plaintiff's assertion is inconsistent with the substance of the letter which treated the 21 days as FMLA leave. See Gelormini Decl., Ex. 4.

---

[4]Nevertheless, plaintiff does not specify any statute or regulation as to why the February 2007 request to re-certify was improper. The applicable FMLA regulation allows an employer to request re-certification "no more often than every 30 days" and expressly authorizes an employer to seek medical certification for FMLA leave concerning an employee's seriously ill spouse. See C.F.R. §§825.308[a] and 825.305[a].

Accordingly, even when considering the Complaint in the light most favorable to plaintiff, Monroe County did not deny or interfere with plaintiff's FMLA leave rights. Thus, the County's motion for judgment on the pleadings is granted and plaintiff's second cause of action is dismissed.

### D.    FMLA Retaliation Claim

Plaintiff alleges that he was retaliated against for asserting or attempting to assert his rights under the FMLA. A claim of retaliation for taking FMLA leave is analyzed pursuant to the McDonnell Douglas burden-shifting framework. See Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 176 (2d Cir.2006); Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir.2004). Accordingly, to state a prima facie case for retaliation [under the FMLA], the plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. See Sista, 445 F.3d at 176. Plaintiff conclusory argues that he was engaged in protected activity. See Pl. Opp. Br. at 24. However, the Complaint does not show that plaintiff protested or opposed any practice by the County that was made unlawful by the FMLA [29 U.S.C. §2615(a)(2)]. See Belgrave v City of New York, 1999 WL 692034 at *43 (E.D.N.Y.1999) ("a plaintiff possesses a claim for retaliation under the FMLA only to the extent he was

discharged...against for...opposing practices made unlawful by the FMLA").

Here, plaintiff merely alleges that "he engaged in protected activity when he in good faith requested, and received leave under the [FMLA]" and he was "wrongfully retaliated against for his requests for, and use of leave under the FMLA." See Complaint, ¶¶132-133. The allegations do not show that plaintiff made any statements opposing an unlawful employment practice. See Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir.2007) ("[plaintiff's] statements...are not protected because they did not amount to opposition to an unlawful employment practice"). Accordingly, this Court finds that Alessi has not sufficiently plead that he has opposed or protested any practice made unlawful by the FMLA and as such his retaliation claim fails.

Assuming arguendo that plaintiff could satisfy the first element of a prima facie case, plaintiff has failed to allege that Monroe County knew or was aware of any alleged opposition or protest by plaintiff. See Grupo v. FedEx Inc., 296 Fed.Appx. 660, 664 (10th Cir.2008) (plaintiff "did nothing more than convey his general concern that terminati[on]...might be illegal, he did not adequately inform defendants of his protected opposition under FMLA"). Further, even if plaintiff could satisfy the first two elements of the prima facie case, he is unable to show that he suffered an adverse employment action. For instance, plaintiff alleges that when he

returned from FMLA leave "defendants would shift his work assignments around causing him to work in different areas[.]" See Complaint, ¶44. In addition, the Complaint asserts that plaintiff "has suffered and will continue to suffer a loss of employment benefits and job opportunities" (see Complaint, ¶134) but he does not set forth any specifics of such losses. Importantly, plaintiff does not allege that these shift changes caused any demotion or loss of pay. In fact, plaintiff is still currently employed at the Monroe County Jail and has never lost his job at the County.

A plaintiff must demonstrate that he or she was subjected to adverse employment action, which, for purposes of a retaliation claim, is a "materially adverse change in the terms and conditions of employment." See Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir.2005), abrogated on other grounds, Burlington N. & Santa Fe Ry. v White, 126 S.Ct. 2405 (2006) (internal quotation omitted). This change must be one that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000) (internal quotation omitted). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices...unique to a particular situation.'" Fairbrother, 412 F.3d at 56 (quoting Galabya, 202 F.3d at 640). Here, plaintiff's only

24

assertion is that his job assignment changed but he does not allege that his job responsibilities or pay changed. Accordingly, plaintiff fails to satisfy the requirements of an FMLA retaliation claim. Thus, the County's motion for judgment on the pleadings is granted and plaintiff's third cause of action is dismissed.

### V.   State Law Claim

A cause of action under the NYSHRL is subject to the notice of claim requirements of County Law §52. See Mills v. County of Monroe, 59 N.Y.2d 307, 308 cert. denied 464 U.S. 1018 (1983) ("When an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court."); Hibbert v. Suffolk County Dept. of Probation, 267 A.D.2d 205 (2d Dept.1999); Piontka v. Suffolk County Police Dept., 202 A.D.2d 409 (2d Dept.1994). Accordingly, the Court determines that County Law §52 requirement of a notice of claim does apply and does indeed bar plaintiff's NYSHRL claim. See Mills, 59 N.Y.2d at 308. Plaintiff's failure to timely serve a notice of claim under County Law §52 in this action against Monroe County to recover damages based on the NYSHRL is fatal. See Picciano v. Nassau County Civil Service Com'n, 290 A.D.2d 164 (2d Dept.2001). Thus, the County's motion for judgment on the pleadings is granted and plaintiff's fourth cause of action, the NYSHRL claim is dismissed.

**CONCLUSION**

For the reasons set forth above, the Monroe County defendants' motion for judgment on the pleadings is granted. Plaintiff has conceded that the Sheriff's Department is not a proper defendant and as such, the Sheriff's Department is dismissed as a defendant with prejudice. Accordingly, the Complaint is dismissed with prejudice as to both the Monroe County Sheriff's Department and Monroe County. The only remaining defendant in this case is Robin Brown who did not separately move for dismissal. However, I find that dismissal of plaintiff's case against Brown is appropriate for the same reasons that dismissal of plaintiff's case against Monroe County was appropriate: plaintiff has failed to state a claim upon which relief may be granted, and accordingly, this court also dismisses the Complaint against Brown. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.6 (2d Cir.1990) (citation omitted) (*sua sponte* dismissal appropriate where issues concerning defendant are essentially the same as those issues faced by defendants whose motions for dismissal were granted); Wachtler v. County of Herkimer, 35 F.3d 77, 82 (2d Cir.1994) (a district court may dismiss a complaint *sua sponte* if it fails to state a claim against non-moving defendants). Therefore, plaintiff's Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Micheal A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
            January 13, 2010